## No. 9581.

### F. GOMEZ, JR., vs. ISAAC LEVY.

A stipulation in a contract between a planter and his manager that the latter would receive as compensation for his services one-third of the net proceeds of the crops raised by him must be construed to mean the proceeds realized from the crops after deduction of all charges and outlay, such as costs of cultivating, of saving, of shipping and of selling the same.

In such a contract, a stipulation that the manager or employee is to share in the losses of the enterprise cannot be construed as including the loss of working animals by death from natural causes.

APPEAL from the Civil District Court for the Parish of Orleans. *Lazarus*, J.

---

*Gibson, Hall & Montgomery* and *T. M. Gill* for Plaintiff and Appellant.

*Thos. J. Cooley* for Defendant and Appellee.

---

The opinion of the Court was delivered by

POCHÉ, J. This litigation grows out of the following contract in writing, made between the parties, for the year 1881 and renewed by mutual consent for the year 1882 :

"State of Louisiana, parish of Pointe Coupee; agreement entered into this day between the undersigned, Isaac Levy and Francis Gomez, Jr.:

"Article 1. Isaac Levy agrees to give unto Francis Gomez, Jr., (⅓) one-third of all the net proceeds of all sugar, molasses and corn that he, as manager of said Isaac Levy, may make on the Unique plantation for the present year, 1881.

"Article 2. In consideration of the above agreement said Francis Gomez, Jr., agrees to share (⅓) one-third of all losses which may occur on the said Unique plantation for the present year, 1881, and furthermore agrees to devote his entire time and labor to the best of his

ability to make a crop of cane and corn on said Unique plantation, as above stipulated.

Thus done and signed this 11th May, 1881.

Signed:                                ISAAC LEVY.

F. GOMEZ, JR.

Plaintiff claims one-third of the net proceeds of the crop of 1882, which he alleges amounted to $5770 10, it being one-third of the following items:

Net proceeds of sugar, molasses and cotton.............. $13,061 55

2659 bbls. of corn, worth $1 25 per bbl................... 3,323 75

185 loads of hay, at $5 00 per load...................... 925 00

Total........................................... $17,310 30

The defense is substantially a general denial, followed by a statement of the gross proceeds of the crop and of the expenses of making, saving, shipping and selling the same, under which defendant contends that plaintiff would be entitled to only $276 21, against which he pleads in compensation and reconvention a store account due to him by plaintiff, two promissory notes subscribed by the latter, and damages in the sum of five thousand dollars for alleged mismanagement of his planting interests by plaintiff during the year 1882.

Judgment was rendered in favor of plaintiff for $471 34, with costs of main action, and in favor of the defendant for the store account, $114 10, and for the amount of the two prommissory notes, $513 14, and dismissing as in case of non-suit the demand in reconvention for damages. Although the contract made no reference to the cotton raised on the plantation, yet it appears from the record that in his account with plaintiff, the defendant gave him credit for the proceeds of the cotton, hence this matter is eliminated from the discussion.

The contract makes no mention of any intention to include the hay crop in the division of the crops, and defendant correctly resists the claim of plaintiff to participate in that element of the crop. It is not even shown that any hay was raised for the market, and the record shows that hay was made to be used and actually fed as forage for the working animals employed in the cultivation of the cane crop, which was the staple production of the plantation.

Hence, plaintiff can urge no legal claim to any portion of the hay thus made, either in kind or in estimated value.

The main contention in the case hinges upon the true meaning of what the parties contemplated as the net proceeds of the sugar, molasses and corn raised by the manager.

Plaintiff's counsel argue that the net proceeds of the sugar and molasses consist of the price obtained on the market for the same, after deducting costs of transportation and storage, and commission on sales.

Such a result would soon cause to dawn an era of prosperity to sugar planters which would far exceed their fondest hopes and their wildest dreams.

Such a construction excludes the unavoidable costs of raising the cane, of grinding the same, and of boiling the same into sugar and molasses, the very costs which too frequently prove so disastrous to that industry.

The net proceeds of any undertaking, either in agriculture or in commerce or other pursuits, must be understood in law, as well as in common sense, to be that which remains after the deduction of all charges or outlay.

This is not only the generally admitted meaning of the words, but it was the precise intention of the parties, as shown by the stipulation contained in the second clause of the contract, wherein it is agreed that Gomez, the manager, was to share one-third of the losses which might have occurred on the plantation during the year covered by the contract.

As the record stands, we are not clearly informed as to the meaning of what the parties contemplated by the net proceeds of the corn to be raised on the plantation.

It is conceded that no corn was intended for sale, and that none was raised in excess of the actual need of the plantation, hence flows the embarrassment of the construction.

But defendant concedes that plaintiff is entitled to the market value of one-third of the corn made on the place in the year 1882, which had not yet been used, and which remained on hand at the end of that year, when the contract of the parties expired.

This concession operates an equitable solution of the question in this case, for the record shows that when the corn raised during the previous year had given out, and it became necessary to buy feed for the stock, it was charged on the plantation account, one-third of which was then contributed by the manager.

The mode of supplying the plantation, both for the wages of the laborers and for other expenses, was by means of a store kept thereon for the account of defendant, through an agent of his. All the money and all supplies necessary to the proper cultivation of the crops were furnished from that store to the manager, and charged to the planta-

tion, and the account thus kept was subject to the manager's inspection. It appears from the record that the account was inspected by Gomez, and by him found correct up to the month of September, and that at the end of the year, on a further examination of the account, he expressed his satisfaction with the same, save some items which will be hereinafter considered.

The principal items now contested by his counsel, are insurance of the sugar-house and taxes assessed on the plantation.

These items had been charged when he made his examination about the month of September, and his failure to object then now precludes him from contesting them.

But the charge of $250, for oxen and a mule which had died, met with a serious objection on his part. We do not understand that the loss of working animals, by death from natural causes, can be included in the losses incurred by the cultivation of the crop. Hence, the manager's objection to that item, which was made in due time, is reasonable and legal, and it must therefore prevail. The balance of the account is supported by competent and satisfactory testimony.

The objection urged by plaintiff's counsel to the introduction of the account, on the ground that it was taken from defendant's books, which are not admissible in evidence in his favor, is not founded in law or in fact.

The account was introduced in connection with the testimony of defendant's agent who had controlled it, and of the book-keeper who had posted it, and that is good evidence.

There is no more merit in their contention to exclude all testimony intended to support defendant's reconventional demand. Their objection could at most apply to the effect of the proffered evidence.

The allegations of the answer were sufficient, although not very clear and explicit, to admit testimony on the various claims included in the reconventional demand. That evidence shows the correctness of the store account and of the two promissory notes which had been annexed as part of the reconventional demand. The account represented personal purchases of Gomez from the store in 1882, and the two notes represented similar indebtedness for the year 1881, and not as he now contends, his portion of the losses of the planting venture in 1881, from which he had been released by the defendant.

We have considered the evidence on defendant's claim for damages caused by plaintiff's mismanagement, neglect and want of skill during the year 1882, and we leave it with the clear conviction that it utterly fails to make out a case against him.

The record shows to our entire satisfaction that Gomez was able, efficient, attentive and faithful in the performance of all his duties, and that the faults attributed to him were committed in obedience of defendant's special orders and directions.

Although the testimony is conflicting on the question of the market value of corn, and of the quantity thereof remaining on the place at the end of the year 1882, we conclude, after fully weighing the evidence, that corn was worth one dollar per barrel at that time and place, and that eighteen hundred barrels remained on hand at the end of the year, thus entitling Gomez to $600 on that score.

We balance the accounts between the parties as follows:

Gross proceeds of the crop—sugar. molasses, cotton........$14,522 13
Expenses of cultivation (deducting $250 as above)......... 13,443 09

Net proceeds....................................$ 1,079 04

One-third to Gomez ...:.................................$359 68
His share in the corn........... ........................ 600 00

Total accruing to Gomez ...........................$959 68

That allowance is subject *pro tanto* to the aggregate amount of the store account and of the promissory notes, to wit: $627 24.

It is therefore ordered that the judgment appealed from be amended by increasing the amount recovered by plaintiff from $471 34 to $959 56, and by rejecting absolutely defendant's reconventional demand for damages, which had been dismissed as in case of non-suit; and, as thus amended, said judgment be affirmed, at defendant's costs in both courts.